## SUNSHINE MINING CO. v. TREINIES et al.

No. 1338.

District Court, D. Idaho, N. D.

May 29, 1937.

Nat U. Brown and C. W. Halverson, both of Yakima, Wash., and James E. Gyde, of Wallace, Idaho, for plaintiff.

Lester S. Harrison, of Kellogg, Idaho, Cox & Ware, of Lewiston, Idaho, Richard S. Munter, of Spokane, Wash., and Walter H. Hanson and F. C. Keane, both of Wallace, Idaho, for defendants Masons, Harrisons, Hansons, and Keane.

Graves, Kizer & Graves, of Spokane, Wash., for defendants Treinies, Seattle First Nat. Bank (Spokane and Eastern Branch), and Hawkins.

CAVANAH; District Judge.

The Sunshine Mining Company brings this action in interpleader under an Act of Congress 28 U.S.C.A. § 41 (26) as to the respective rights and ownership of the defendants to 15,299 shares of stock. issued by it and the dividends accrued and accruing thereon, and that it be discharged from all liability, except its obligation of recognizing the true owner. The controversy has a complicated history as to the efforts of the parties to have their interest in the stock determined, and the jurisdictions invoked would make one wonder if there is any other court remaining, known to American jurisprudence, in which the parties may insist for a decision.

The plaintiff is a corporation organized under the laws of the state of Washington, and authorized to do business in Idaho. A diversity of citizenship between it and the defendants Masons, Harrisons, Hansons, and Keane, and the requisite jurisdictional amount exists. The defendant Cheney is the receiver in the case of the Seattle First National Bank, administrator in the estate of John H. Pelkes and Evelyn H. Treinies, against the defendants Masons, Harrisons, Hansons, and Keane, and the Sunshine Mining Company, pending in the state superior court of Washington.

About August 4, 1934, Masons instituted suit in the state district court of Idaho, against John Pelkes, Frances Thinnes and Pierre Thinnes, Evelyn Treinies and the Sunshine Mining Company, in which the plaintiffs alleged that John Pelkes had acquired 30,598 shares of stock in the Sunshine Mining Company; that he had sold and disposed of all of that stock except 16,000 shares, which he had caused to be issued to Evelyn Treinies; and that Katherine Mason, of the 16,000 shares standing in the name of Evelyn Treinies, was the owner of 15,299 shares, which was acquired with the knowledge of the rights of the plaintiff in that suit. Thereafter all of the defendants in that action appeared and a trial was had resulting in a decree in the Idaho district court decreeing to Katherine Mason the ownership of 7,649 shares and to Evelyn Treinies 8,351 shares of the 16,000 shares of the capital stock of the Sunshine Mining Company. The Thinnes were dismissed in that action prior to the entry of the decree, and the decree there required Evelyn Treinies to surrender her certificate of stock for cancellation and when that was done the Sunshine Mining Company was to issue to Katherine Mason 7,649 shares and to Evelyn Treinies 8,351 shares and to pay the dividends accrued to each of the parties according to their ownership, and in the event that Evelyn Treinies failed to surrender her certificate within ten days the Sunshine Mining Company should cancel the certificate and issue one to Katherine Mason for 7,649 shares and pay to her the dividends accrued thereon, and issue to Evelyn Treinies a certificate for 8,351 shares of the 16,000 shares, upon her complying with the decree. An appeal was

taken from that decree to the Supreme Court of the state of Idaho, by Evelyn Treinies, and the Sunshine Mining Company and the Masons cross-appealed.

John Pelkes and Evelyn Treinies failed to comply with that decree and surrender the certificate of stock, and the Sunshine Mining Company, for the purpose of staying the decree, canceled the certificate of stock standing in the name of Evelyn Treinies and reissued in lieu thereof 7,649 shares in the name of Katherine Mason and 8,351 shares in the name of Evelyn Treinies, and deposited the same with the clerk of the state district court. About July 23, 1936, the appeals of the parties were determined by the Supreme Court of Idaho (Mason v. Pelkes, 59 P.(2d) 1087) in which the decision of the trial court was modified to the effect that Katherine Mason was found to be the owner of 15,299 shares of the stock together with the dividends accrued and accruing thereon, and ordered the clerk of the court to properly indorse the certificate and deliver the same to Katherine Mason. Complying with that decision, the Sunshine Mining Company, on August 20th, issued to Katherine Mason 15,299 shares, which were in lieu of the certificate deposited with the clerk of the state court, and paid $42,225.24 dividends accrued thereon.

Thereafter John Pelkes and Evelyn Treinies made application to the Supreme Court of the United States for writ of certiorari and obtained an injunction pending the appeal restraining Katherine Mason from transferring any of the certificates of stock or disposing of the dividends. The application was denied by the Supreme Court of the United States on January 11, 1937. Pelkes v. Mason, 299 U.S. 615, 57 S.Ct. 319, 81 L.Ed. ——. Katherine Mason and T. R. Mason are now in possession of 15,299 shares of stock and $42,225.24 dividends accrued thereon from August 4, 1934, to August 20, 1936. On December 14, 1934, and while the case was pending in the state district court of Idaho, Katherine Mason filed a petition in the matter of the estate of Amelia Pelkes in the superior court of the state of Washington which she attempted to dismiss after John Pelkes filed a petition in that court resulting in a decree entered May 31, 1935, wherein it was adjudicated that John Pelkes was the owner of 30,598 shares of the Sunshine Mining Company stock, that had formerly stood in his name on the rec-

ords of that company. Subsequently John Pelkes presented the decree entered in the probate proceedings in the superior court of Washington as a defense to the action then pending against him in the state district court of Idaho, which with other defenses was considered and decided by the Supreme Court of Idaho. On August 12, 1936, and while the appeal was pending in the Supreme Court of Idaho, John Pelkes and Evelyn Treinies instituted suit against Masons, Harrisons, Hansons, and Keane and the Sunshine Mining Company, in the superior court of Spokane county, Wash., wherein they alleged that they were the owners of all of the 16,000 shares of stock, and that the state district court of Idaho had no jurisdiction over them and they were not bound by the decree entered by the state district court of Idaho, and prayed that the Sunshine Mining Company be compelled to recognize their ownership in the stock.

While that cause was pending and on October 16, 1936, John Pelkes died, and the Seattle First National Bank was appointed administrator of his estate. On January 11, 1937, an order was entered, without notice to the defendants, in the cause pending in the superior court of Washington, appointing J. C. Cheney as temporary receiver to take into his possession, as receiver, the interest of John Pelkes in the canceled certificate held by Evelyn Treinies. After the appointment of Cheney as receiver, the Sunshine Mining Company gave notice that they would not recognize the ownership of Masons in the 16,000 shares during the pendency of the litigation.

The action pending in the superior court for Spokane county was transferred to the superior court of Yakima county, Wash., where the motions and demurrers of the Sunshine Mining Company, Harrisons, and Hansons were presented and taken under advisement by Judge Hawkins. A temporary restraining order was issued out of Judge Hawkins' court restraining the Sunshine Mining Company from transferring the stock.

It is apparent from the proceedings in the two state courts that the two decrees purport to establish inconsistent rights of ownership in the stock and dividends and therefore the fundamental inquiry of the present complicated litigation is: Under which of the decrees and acts of the parties, who are now entitled to have decreed

to them the ownership of the 15,299 shares of stock and dividends which the Sunshine Mining Company now requests this court to determine?

Some years ago John Pelkes and Amelia Goetz, a widow with two children, married, one of the children died in infancy the other is Katherine Mason. In 1922 Amelia Pelkes died testate, in Spokane, Wash. The property of the couple was community property and, by will, Amelia Pelkes gave her one-half of the community to be disposed of in equal shares to her husband, John Pelkes, and her daughter, Katherine Mason. The will of Amelia Pelkes was probated in 1922 in the superior court for Spokane county, Wash., sitting in probate. The laws of the state of Washington (Rem.Rev.Stat. § 11213) requires a statement of the property be accompanied with the petition for letters of administration. These shares of stock were not included in the inventory and appraisement of the property in that estate, nor specifically mentioned in the final account or decree of distribution, although the decree of distribution contains the general clause "any other property not known or described, which may belong to said estate."

After the decree of distribution Pelkes and Mrs. Mason made an equal division of the property affected, and that of the stock here involved they agreed that Pelkes was to hold title to the 15,299 shares for Mrs. Mason in trust for her. Pelkes in 1933 transferred 16,000 shares of the stock which included the 15,299 shares to Treinies. After repudiating the trust agreement, Mrs. Mason instituted the suit referred to, against him on August 4, 1934, in the state district court of Idaho, to establish and enforce the trust.

The parties now present two diverse contentions as to who is the owner of the 15,299 shares of stock and the dividends accruing thereon, and Evelyn Treinies and the administrator of the estate of John Pelkes assert ownership therein based upon a judgment of the superior court for Spokane county, Wash., rendered May 31, 1935, in the estate of Amelia Pelkes, in which they urge was a judgment of a court having prior jurisdiction of the controversy and was therefore entitled to full faith and credit in every court in which title to the shares of stock was subsequently the subject of adjudication. While, on the other hand, Masons, Harrisons, Hansons, and F. C. Keane urge that the decision, judgment, and order entered by the Supreme Court of Idaho, wherein Katherine Mason was decreed to be the owner of 15,299 shares and dividends, is conclusive and constitutes a bar to further prosecution in an action by Treinies or Pelkes' successor. These contentions all call for a consideration of the proceedings had in the Washington and Idaho courts in order to determine which judgment is final and binding upon the parties.

Referring then, first, to the proceedings initiated in the Washington superior court, we find that the superior court of Spokane county, Wash., sitting in probate, on August 9, 1923, entered a decree of distribution in the estate of Amelia Pelkes, wherein her will, of date September 25, 1918, was probated, distributing all of the property of the estate, including that not known or described, to the sole legatees under the will, who were John Pelkes, her husband, and Katherine Mason, a daughter by a former marriage. The mining stock here in question was not specifically described in that decree. In carrying out the terms of the will, the decree of distribution decreed, "that the residue of said estate of Amelia Pelkes, hereinafter particularly described, and now remaining in the hands of said executor, and any other property not known or described, which may belong to said estate, or in which said estate may have any interest, be and the same is hereby distributed to and vested in the following persons in the following portions, to-wit: John Pelkes, husband, Spokane, Washington, an undivided one-half interest thereof; Katherine Mason, daughter, Kellogg, Idaho, an undivided one-half interest.

"By this decree said John Pelkes becomes the owner of an undivided three-fourths interest in the property described in the inventories on file herein, or the proceeds thereof, and the said Katherine Mason becomes owner of the remaining one-fourth interest undivided, in said property, the said John Pelkes being the owner of a community or undivided one-half interest of the said property at the time of the death of his wife, the said Amelia Pelkes.

"The following is a particular description of said residue of said estate referred to in this decree and of which distribution

is ordered, adjudged and decreed." (Then follows a description of the property, in which no mining stock is mentioned.)

It appears that all of the property in which Amelia Pelkes had interest at the time her will was executed and her death was community property in which she had an undivided one-half interest and her husband, John Pelkes, an undivided one-half interest, under the laws of both the states of Washington and Idaho. John Pelkes was, under the will and order of the superior court of Washington, appointed executor of the estate without bond, as provided in the will, to fully execute and distribute the estate without any application to any court for leave or confirmation, and without any intervention of any court unless the same is expressly required by law. The next step taken in the superior court of Washington was December 19, 1934, some eleven years after the decree of distribution, and subsequent to the commencement of the present action on August 4, 1934, in the Idaho court, when Mrs. Mason filed a petition in the superior court of Washington wherein she alleged, among other things, that certain property belonging to the estate, including 30,598 shares of capital stock of the Sunshine Mining Company, had not been inventoried or probated, and she further alleged that Pelkes as executor had wasted or embezzled the property and had committed fraud upon the estate and that he was incompetent to act and requested that he show cause why he should not be removed as executor and his letters of administration revoked. Later she sought to dismiss her petition. Pelkes replied to the petition and alleged that he was the owner of the stock. Thereafter, on May 31, 1935, the superior court for Spokane county, Wash., entered a judgment now relied upon by Evelyn Treinies and the administrator of the estate of John Pelkes, in which it ordered that Mrs. Mason had no interest in the shares of stock by reason of an agreement between her and John Pelkes, and adjudged the estate of Amelia Pelkes to have been fully administered upon and closed.

In the steps taken in the courts of Idaho, we find that the first proceeding was a suit initiated on August 4, 1934, in the state district court of Idaho, by Katherine Mason and T. R. Mason, her husband, against John Pelkes, Evelyn Treinies, Frances Thinnes, and Pierre Thinnes, her husband, and the Sunshine Mining Company, to procure a decree adjudging 15,299 shares of the capital stock of the Sunshine Mining Company to have been held by Pelkes in trust for Katherine Mason prior to his transfer of it to Treinies, Thinnes, and his wife, and that the transfers were fraudulent and without consideration and in violation of the trust. The state district court of Idaho awarded to Katherine Mason 7,649 shares of stock evidenced by certificate No. 2777–A held by Treinies, and she and her husband were adjudged to be the owners of the dividends accrued thereon since August 4, 1934. Treinies was required to indorse and deliver to the Sunshine Mining Company the certificate which was to be canceled, and in lieu thereof to issue to Katherine Mason a certificate for 7,649 shares and pay to plaintiffs the dividends accrued and accruing thereon since August 4, 1934, and also to deliver to Treinies, or her assigns, a certificate for the residue of the stock evidenced by certificate No. 2777–A and pay to her, or her assigns, the dividends thereon accruing since August 4, 1934, and the defendants were enjoined from commencing or taking any further proceedings in the courts of Washington in the matter of the estate of Amelia Pelkes, or in any court.

An appeal was taken to the Supreme Court of Idaho, from the trial court of Idaho, and on July 23, 1936, that court rendered its decision modifying the decree of the trial court and awarded to Katherine Mason the 15,299 shares of stock and the dividends accrued and accruing thereon since August 4, 1934, now in controversy, and required the Sunshine Mining Company to account for all dividends collected by them on the stock.

With these recitals as to what has occurred in the state courts of Washington and Idaho, and the Supreme Court of the United States, the first inquiry is as to the effect of the proceedings in the superior court of Washington, relative to the judgment of ownership of the 15,299 shares of stock at the time of the decree of distribution rendered on May 9, 1923, and the judgment of May 31, 1935, under the records of the superior courts of that state. Under the laws of Washingon, the superior court for Spokane county, sitting in probate, had jurisdiction and power to probate the estate of Amelia Pelkes under her will and render a decree of distribution of property then inventoried and un-

known property of which she may have been possessed, and, when such decree was rendered, title was vested in the beneficiaries under the will. Remington's Revised Statutes of Washington, §§ 1371 and 1533. The effect of that decree and the interval between its entry and the final discharge of the executor is stressed by Evelyn Treinies and the administrator of the estate of John Pelkes as continuing the exclusive jurisdiction and power in the superior court of Washington to decree and dispose of the shares of stock here involved. The decree of distribution of the personal property was a comprehensive and final one under the laws of Washington and if not appealed from cannot be collaterally attacked; Alaska Banking & Safe Deposit Company v. Noyes et al., 64 Wash. 672, 117 P. 492; Parr v. Davison et al., 146 Wash. 354, 262 P. 959, and, being so, the executor pursuant to that decree delivered the whole of the property of the estate to the beneficiaries, which passed out of the custody of the superior court of Washington. Nothing else was required of the executor to have been done, except to make final account to the court in which he was to report that he had complied with the decree of distribution and delivered to the heirs the property decreed to them. No further order or confirmation of the court was required to have been made as to the shares of stock here involved, except the court may, when a hearing is had for a distribution, partition, among the persons entitled thereto, the estate held in common and undivided, and designate and distribute their respective shares to the end that the estate may be administered and distributed to those entitled thereto. Remington's Revised Statutes of Washington, § 1533. Under such circumstances the jurisdiction of the probate court was closed as to the shares of stock here involved, after the heirs had made amicable division of their own property, as no controversy then existed to which jurisdiction of the probate court could attach. The parties' interests in these shares of stock could be definitely, mathematically determined under the decree of distribution, as the decree gives to them a definite interest in the property which could be determined and partitioned by them, as was done, and the executor, when in dealing with the number of shares of stock, determined mathematically a definite number of shares to be delivered to the heirs, and therefore it would not have required a petition for partition to be filed with the court, after the final decree of distribution was made. The laws of the state of Washington provide that, after decree of distribution was rendered on August 9, 1923, the parties must move within the time required by the laws of Washington, if there is any dispute between them questioning the decree of distribution; Remington's Revised Statutes of Washington, § 466, and the effect of such a decree of distribution, as said by the Supreme Court of Washington, is that it "has all of the force, effect, and finality of any other final judgment rendered by a superior court." In re Doane's Estate, 64 Wash. 303, 116 P. 847, 849.

The Supreme Court of that state disposed of the theory as to the superior court sitting in probate continuing jurisdiction to adjudicate property of an estate after it was decreed in a decree of distribution, in the case of In re Thompson's Estate, 110 Wash. 635, 188 P. 784, 785, where it was held that after an heir had disposed of her interest in the estate she no longer could have a legal interest in the probate matter, and the probate court was not entitled to in any way consider it. The fact that Katherine Mason filed a petition in the superior court of Washington on December 19, 1934, after decree of distribution was rendered and claiming a right under the will to have complete administration of the estate in ascertaining whether there were any unadministered assets, presented an issue between a claimant under the will and the executor as such. To her petition, Pelkes answered, denying that there were unadministered assets that would give the Washington court jurisdiction, and then as an individual he pleaded by cross petition and sought adjudication upon a contractual controversy which he had previously submitted to the Idaho court, who had obtained jurisdiction as a court of equity to hear and determine the issue of fact to enforce a trust claimed to have been entered into in Idaho, where the shares of stock were, and growing out of a division of property made pursuant to a family settlement. In the Idaho case Mrs. Mason was not estopped by reason of her filing the petition in the superior court of Washington, as the doctrine of estoppel is governed by the laws of the forum, and in Idaho the rule is that no estoppel will arise where there is no injury. City of Cœur

d'Alene v. Spokane, etc., Ry. Co., 31 Idaho, 160, 169 P. 930.

What then was the nature of the action in the Idaho court? It was simply one to enforce an oral trust growing out of the division of personal property that had been derived from a decree of distribution after it had been completely distributed, and therefore the cause of action was cognizable by a court of general equitable jurisdiction. That jurisdiction was vested in the Idaho court. Pelkes and Treinies appeared in the Idaho court, which gave it jurisdiction over both parties and the subject matter. That jurisdiction attached before Mrs. Mason's petition was filed in December, 1934, in the superior court of Washington. The Idaho court then acquired jurisdiction first of the parties and the controversy over the ownership of the 15,299 shares of stock, and the decision of the highest court of that state, which was not disturbed by the Supreme Court of the United States when in denying Pelkes' and Treinies' application for writ of certiorari; is final and conclusive upon the federal courts. While a denial of a petition for a writ of certiorari in a particular case does not constitute a precedent for any other case, yet it is an affirmance of the judgment in the particular case sought to be reversed. When as disclosed by the present record, which includes the record in the Idaho case, where the enforcement of a trust growing out of a division of the shares of stock was involved, and the Supreme Court of Idaho having concluded, when in considering the issue of fact relative to the controversy of ownership of the shares of stock between the parties, to be owned by Katherine Mason, its decision upon that issue of fact is conclusive upon which it is based, and final and conclusive upon the parties in all future litigation between them, when, as said, it had jurisdiction first to determine that issue. The scope of the issue, as to the existence of an oral trust now presented, involved in the Idaho case an adjudication of that issue. A reading of its opinion leaves no doubt that the ownership in the 15,299 shares of stock was awarded to Katherine Mason, as the court said, after considering the same issue of fact as here: "This suit was commenced August 4, 1934, by Katherine Mason and T. R. Mason, her husband against John Pelkes, Evelyn H. Treinies, Frances Thinnes and Pierre Thinnes, her husband, and Sunshine Mining Company, to procure a decree adjudging 15,299 shares of capital stock of the mining company to have been held by Pelkes in trust for Katherine Mason prior to his transfer of it to Treinies, Thinnes and his wife; that the transfers were fraudulent and without consideration and in violation of the trust; that the defendants, other than the mining company, be enjoined from selling or otherwise disposing of the stock, and that the mining company be enjoined from permitting a transfer thereof and from paying any dividends thereon pending final determination of the suit; also for an accounting for dividends therefor paid. A temporary restraining order and injunction pendente lite were granted. * * *

"The Sunshine Mining Company stock here in controversy, aggregating 30,598 shares, belonged to the estate at the time of the decree of distribution and was treated by the executor and beneficiary, Pelkes, and Mrs. Mason, the other beneficiary named in the will, as a part of the estate so distributed. They thereafter brought all personal property derived from the estate, including the certificates of shares of that mining stock, to Idaho and entered into an agreement for the division thereof and it was divided. The only disagreement between them is Pelkes insists it was agreed he was to have all the mining stock while Mrs. Mason insists the agreement was she was to have half of it. The distribution of property which both parties claim was made being one-fourth to Mrs. Mason and three-fourths to Pelkes, included that made under the omnibus clause of the decree which distributed 'any other property not now known or described,' and disposed of the entire estate, including the mining stock, and both parties so understood and agreed. No controversy existed, or now exists, between the parties over the distribution of the property, and the only dispute is as to the terms of the agreement between them, after the distribution was ordered and made, whereby it was divided. The mining stock, having been distributed, was no longer property of the estate and the Washington Court, sitting in probate, did not have jurisdiction of it.

"A decree in probate, distributing an estate, is a final adjudication, subject to appeal, of the rights of the distributees to receive the property awarded to them, but a Court of probate has not jurisdiction to decide questions of title, to the property distributed, arising out of contracts be-

tween the distributees after the decree is entered. * * *

"There is no contention that fraud was practiced or that mistake occurred in making the division, the controversy is as to the terms of the agreement, voluntarily entered into between the parties with full knowledge of the facts, by which the division was made. Respondents' contention is that 15,299 shares of Sunshine Mining Company stock were, by the agreement, held in trust for Mrs. Mason by Pelkes and were by him transferred in violation of the trust to Treinies, who took them with knowledge of it. This contention is sustained by the evidence. Appellants, other than the mining company, contend that said stock, and all of it, became the property of Pelkes in the division of the estate of Amelia Pelkes, deceased, and was not held in trust by him for Mrs. Mason. This contention is not sustained by the evidence.

"Conclusions of law, consistent with the findings, were made and the decree, heretofore referred to, was entered.

"The case is remanded to the district Court with directions to amend the findings of fact and conclusions of law to conform to the views herein expressed, and to amend and modify the decree and therein award to Katherine Mason 15,299 shares of the capital stock of Sunshine Mining Company in controversy herein, and adjudge respondents to be the owners of the dividends accrued and accruing thereon since August 4, 1934, and require appellants, other than Sunshine Mining Company to account for all dividends collected by them on said stock, and award judgment against them, severally, in favor of respondents, for any balance found to be due on account thereof. Costs are awarded to respondents."

■ Its effect is a bar to the present proceeding in so far as it seeks to deprive Katherine Mason of the ownership of the 15,299 shares. American Surety Co. v. Baldwin (D.C.) 51 F.(2d) 596, which was affirmed by the Supreme Court in 287 U. S. 156, 53 S.Ct. 98, 77 L.Ed. 231, 86 A.L. R. 298. Public policy dictates that there be an end of litigation, and especially where the parties have contested an issue in a court having first jurisdiction. This thought is forcibly expressed by Mr. Justice Roberts in the case of Baldwin v. Iowa State Traveling Men's Association, 283 U. S. 522, 525, 51 S.Ct. 517, 518, 75 L.Ed. 1244, where it is said: "Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest; and that matters once tried shall be considered forever settled as between the parties. We see no reason why this doctrine should not apply in every case where one voluntarily appears, presents his case and is fully heard, and why he should not, in the absence of fraud, be thereafter concluded by the judgment of the tribunal to which he has submitted his cause."

With the views thus expressed the conclusion is reached that Katherine Mason is the owner of the 15,299 shares of stock and all dividends accruing thereon since August 4, 1934.

■ Attention is called to the status of the 701 shares of stock in the Sunshine Mining Company, which is the difference between the 16,000 shares and the 15,299 shares, now being held by the sheriff of Shoshone county, Idaho, under a levy issued out of the state district court of Idaho, upon a judgment of that court for $19,-429.73 in favor of the Masons, entered pursuant to directions of the Supreme Court of Idaho, for past dividends collected by Treinies and Pelkes. A certificate for 701 shares was issued in the name of Treinies and deposited in the state district court. The ownership of the 701 shares in Evelyn Treinies is not questioned here, but the Masons contend that, since the remittitur came down from the Supreme Court of Idaho, the 701 shares and dividends accrued thereon are subject to the lien of their judgment. That contention is upheld by the Supreme Court of Idaho, and, therefore, the 701 shares and dividends accruing thereon are subject to the satisfaction of the Masons' judgment, and the sheriff is directed to proceed accordingly.

Costs are awarded in favor of Katherine Mason, and counsel for her are requested to prepare findings and decree in accordance with the conclusions here reached, and serve copy upon opposing counsel, to be submitted to the court within fifteen days.